UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IVAN ARROYO, *on behalf of himself and others similarly situated*,

                       Plaintiff,

                    -v.-

NYU LANGONE HOSPITAL,

                       Defendant.

19 Civ. 1624 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Ivan Arroyo, a security guard employed by Defendant NYU Langone Hospitals, filed this putative class action in New York state court, alleging that Defendant had failed to pay its security guards compensation owed to them under New York Labor Law ("NYLL") §§ 190, 191, 198, and 663 and the New York Codes, Rules, and Regulations ("NYCRR") § 142-2.2. Defendant removed the case to federal court pursuant to 28 U.S.C. § 1441, claiming that Plaintiff's state-law claims were preempted under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Plaintiff now moves to remand the case back to state court. For the reasons that follow, Plaintiff's motion is granted.

## BACKGROUND[1]

Defendant employed Plaintiff as a security guard.[2] It is undisputed that the terms of Plaintiff's employment with Defendant were governed by collective bargaining agreements ("CBAs"), negotiated by Defendant and Plaintiff's union, the Local One Security Officers Union ("Union"). Each CBA provided that security guards would work a 40-hour week and would be paid overtime for all hours worked in excess of eight hours per day and 40 hours per week. (Perez Decl., Ex. A at 5; Ex. B at 5). The CBAs also stated:

> After employees are relieved by their replacement, he/she is to report to the muster room to check-in all equipment and then participate in a collective muster to report and discuss developments and observations. Upon the conclusion of said muster, absent a need for any/all employee to perform a new assignment, each employee shall then be permitted to change into his/her civilian clothing before signing out. Employees are not required to change into civilian clothing, and may wear their uniforms to and from work[.]

(Perez Decl., Ex. A at 6; Ex. B at 6).

---

[1] The Court draws the facts in this section from the complaint filed in New York state court ("Complaint" or "Compl." (Dkt. #1, Ex. A)). For ease of reference, the Court refers to Plaintiff's Memorandum of Law in Support of His Motion to Remand as "Pl. Br." (Dkt. #14), Defendant's Opposition to Defendant's Motion to Remand as "Def. Opp." (Dkt. #19), and Plaintiff's Reply in Further Support of His Motion to Remand as "Pl. Reply" (Dkt. #23). References to individual declarations are referred to using the convention "[Name] Decl."

The Court pauses to note its disappointment with Plaintiff's counsel, who plainly violated the spirit of the Court's page limits by shunting large portions of the briefing into footnotes of greatly reduced font size. (*See* Pl. Reply). Counsel will almost certainly have future cases before the Court. The Court remembers, and will not tolerate similar conduct going forward.

[2] The Complaint alleges simultaneously that Plaintiff "worked" and "work[s]" for Defendant as a security guard. (*Compare* Compl. ¶ 4, *with id.* at ¶ 14).

Plaintiff filed this action against Defendant in New York Supreme Court, New York County, on January 18, 2019. (Dkt. #1). The Complaint alleged that Defendant failed to pay its security guard employees all the wage and overtime compensation they were owed from January 2013 to the present, pursuant to NYLL §§ 190, 191, 198, and 663, and 12 NYCRR § 142-2.2. (Compl. ¶¶ 21-32). Plaintiff claimed that this uncompensated time included "time spent changing in the locker room, time spent assembling for roll call before each shift, time spent waiting for relief workers to appear [at] the end of each shift, and time spent at the end of the shift going back to the locker room to change and store the security uniform." (*Id.* at ¶¶ 14-19, 29-32).

Defendant removed Plaintiff's case to federal court on February 21, 2019, invoking § 301 of the LMRA, 28 U.S.C. § 185(a), as grounds for removal. (Dkt. #1). Section 301 of the LMRA confers federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 28 U.S.C. § 185(a). Defendant claims that, though Plaintiff had not specifically pleaded that Defendant's conduct violated the CBAs, Plaintiff's claims "clearly and unavoidably implicate" and "integrally rely on an interpretation of" the CBAs and were thus subject to federal jurisdiction. (Dkt. #1 at 5).

Plaintiff moved to remand the case back to New York State Supreme Court, New York County, on March 22, 2019, arguing that federal jurisdiction was not appropriate under § 301 of the LMRA because the Complaint did not allege that the CBAs or any federal law had been violated. (Dkt. #12, 13, 14). Defendant filed its opposition papers on April 5, 2019. (Dkt. #19). The motion

3

was fully briefed and ripe for the Court's consideration when Plaintiff filed its reply papers in further support of the motion to remand on April 26, 2019. (Dkt. #22, 23).

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions to Remand

"A district court must remand a case to state court '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'"  *Vera* v. *Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (per curiam) (quoting 28 U.S.C. § 1447(c)).  The party seeking removal of the action to federal court "bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr.* v. *Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011).  "Given 'the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.'" *Berger* v. *New York Univ.*, No. 19 Civ. 267 (JPO), 2019 WL 3526533, at *1 (S.D.N.Y. Aug. 2, 2019) (quoting *Lupo* v. *Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

#### 2.   LMRA Preemption

Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the

4

>>amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has interpreted "§ 301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 209 (1985). "Thus, when a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by § 301 and must instead be resolved by reference to federal law." *Vera*, 335 F.3d at 114. "Section 301 preempts not only claims directly alleging that a party has violated a provision of a CBA, but also those state-law actions that require interpretation of the terms of a CBA." *Kaye* v. *Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 420 (S.D.N.Y. 2013) (quoting *McLean* v. *Garage Mgmt. Corp.*, No. 10 Civ. 3950 (DLC), 2011 WL 1143003, at *2 (S.D.N.Y. Mar. 29, 2011)). Thus, "[w]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Vera*, 335 F.3d at 114 (quoting *Allis-Chalmers Corp.*, 471 U.S. at 220).

However, "[n]ot every suit concerning employment or tangentially involving a CBA ... is preempted by [§] 301." *Vera*, 335 F.3d at 114; *see Kaye*, 975 F. Supp. 2d at 421. "For example, if a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by § 301." *Vera*, 335 F.3d at 115. Indeed, "[e]ven if resolving a dispute under a state law

5

claim and the [CBA] 'would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes.'" *Severin* v. *Project OHR, Inc.*, No. 10 Civ. 9696 (DLC), 2011 WL 3902994, at *4 (S.D.N.Y. Sept. 2, 2011) (quoting *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988)). "Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" *Vera*, 335 F.3d at 115 (quoting *Lingle*, 486 U.S. at 413 n.12).

"The touchstone question for preemption, then, is whether 'resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Berger*, 2019 WL 3526533, at *2 (quoting *Vera*, 335 F.3d at 114). If so, then the claim is preempted pursuant to § 301 of the LMRA. But if "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation" provides no basis for LMRA preemption. *Id.* (quoting *Livadas* v. *Bradshaw*, 512 U.S. 107, 124 (1994)). The Second Circuit has cautioned that "[t]he boundary between claims requiring interpretation of a CBA and ones that merely require such an agreement to be consulted is elusive." *Vera*, 335 F.3d at 115 (alteration in original) (internal quotation marks omitted).

**B.     Analysis**

To review, Plaintiff did not so much as mention the CBAs in his Complaint, let alone allege that Defendant had violated any term of the CBAs. Instead, Plaintiff alleged that Defendant violated the NYLL and its accompanying regulations by failing to pay wage and overtime compensation for security guards' pre- and post-shift work.  (Compl. ¶¶ 21-32).  Defendant asserts that, though Plaintiff's claims do not invoke the CBAs, they cannot be adjudicated without interpreting the CBAs.  The Court disagrees, and concludes that Defendant has failed to establish that Plaintiff's claims require interpretation of the CBAs.

Plaintiff brings his claim for unpaid wages under NYLL §§ 190, 191, 198, and 663, which allow an employee to recover unpaid compensation at the employer's regular rate of pay.  Plaintiff brings his claim for unpaid overtime compensation under 12 NYCRR § 142-2.2, which provides: that "[a]n employer shall pay an employee for overtime at wage rate of one and one-half times the employee's regular rate" for hours worked in excess of 40 hours per workweek.[3] These state law provisions supply a right to compensation that is entirely independent of any contractual rights afforded to Plaintiff in the CBAs.  *See Polanco* v. *Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 134 (E.D.N.Y. 2011)

---

[3]     Though these state-law provisions require reference to the rates of pay established in the CBAs, this alone does not mean the suit is preempted under the LMRA.  *Vera* v. *Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003) (per curiam) ("Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" (quoting *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988))).

("Although the CBA may provide additional rights to the employees, it may not override independent statutory rights provided by the NYLL."). Thus, Plaintiff "may prevail on [his] state[-]law claims regardless of whether the defendants [ ] paid [him] in the manner provided by the CBA," *McLean*, 2011 WL 1143003, at *4, "because N.Y. Labor Law § 663 creates a private cause of action to enforce the rights created under the Labor Law and corresponding regulations, and the existence of, and Defendant's compliance with, the CBAs is 'no defense to such action.'" *Kaye*, 975 F. Supp. 2d at 422-23 (quoting NYLL § 663). Indeed, "[c]ourts have routinely held that the sort of unpaid wage [] claims under the NYLL alleged here are 'legally independent' of wage-related provisions in a CBA and are therefore not preempted by the LMRA." *Chu* v. *Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228-29 (S.D.N.Y. 2016) (citing *Severin*, 2011 WL 3902994, at *4; *Kaye*, 975 F. Supp. 2d at 425-26; *McLean*, 2011 WL 1143003, at *3; *Polanco*, 819 F. Supp. 2d at 134); *see also Berger*, 2019 WL 3526533, at *3 (finding that identical New York state-law claims for wage and overtime compensation could be adjudicated purely under state law, "irrespective of the terms of [the] employment contract").

Defendant does not appear to contest that New York law provides an independent ground on which Plaintiff may recover wages and overtime for uncompensated work. Instead, Defendant argues that determining what constitutes "work" that is entitled to compensation under New York law will depend on the terms of the underlying CBAs. Specifically, Defendant claims that whether or not the security guards' activities at the beginning and ending

8

of each shift — performing such tasks as donning and doffing uniforms, assembling for roll call, waiting for relief workers, and returning to the locker room — are compensable work under New York law depends on the definition of work contained within the CBAs.

In a recent opinion, *Berger* v. *New York University*, Judge Oetken of this District addressed a nearly identical argument. 2019 WL 3526533. There, a plaintiff who was employed as a security guard by New York University filed a suit in New York state court, also claiming that his employer had violated the NYLL by failing to pay wage and overtime compensation for work done at the beginning and ending of each shift. *Id.* at *1. The defendant removed the case to federal court, asserting that the case was preempted under the LMRA because it required the interpretation of a collective bargaining agreement, and the plaintiff moved to remand. *Id.* The defendant claimed that the CBA had to be interpreted to determine whether pre- and post-shift work was compensable. *Id.* at *3. Judge Oetken provided the following analysis:

> Of course, the scope of a statutory entitlement does sometimes depend on the terms of an underlying employment contract. For example, NYU cites authority addressing statutes under which an employee's entitlement to receive compensation for donning and doffing time depends on whether the underlying employment contract conceives of that time as "working time." …. Importantly, though, none of the authority cited by NYU addresses New York law.
>
> Thus, despite bearing the burden of establishing a basis for federal jurisdiction, *see* [*Collaku* v. *Temco Serv. Indus., Inc.*, No. 18 Civ. 4054 (VEC), 2019 WL 452052, at *2 (S.D.N.Y. Feb. 5, 2019)], NYU has failed to show that New York looks to the terms of the relevant employment contract to decide what portions of the

9

> workday are compensable under state labor law. And [plaintiff's] claim that New York labor law does indeed create a freestanding right to compensation for the sort of "before-shift and after-shift work" at issue here, irrespective of the terms of the underlying employment contract [], is not without support, *see, e.g.*, *Polanco* v. *Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 134 (E.D.N.Y. 2011) (holding that claims that employees "worked ... after regular hours[ ] and ... were not paid for this work" alleged "a violation of an independent statutory right arising under the NYLL"). To be sure, it may turn out that [plaintiff] is wrong and that New York law will indeed require the examination of the CBA's terms to determine whether he is entitled to be paid for otherwise uncompensated donning, doffing, and travel time. But, absent authority that clearly resolves the issue, the state-law question of whether New York law defines compensable time in a way that requires interpreting an underlying labor contract — and that thus triggers LMRA preemption — is best addressed by the New York courts. *See Lupo*, 28 F.3d at 274 (requiring federal courts to "resolv[e] any doubts against removability" (quoting [*Somlyo* v. *J. Lu-Rob Enters. Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991)].
>
> The Court therefore concludes that NYU has failed to demonstrate that establishing its liability on the state-law claims [plaintiff[ has asserted in this case will require interpretation of the CBA.

*Berger*, 2019 WL 3526533, at *3-4.

The Court concludes that Judge Oetken's persuasive analysis is equally applicable here. Defendant argues that pre-shift and post-shift work is not compensable under New York law and may only be compensated under the CBAs, without citing to any source of New York law. (Def. Opp. 6-10). In support, however, Defendant merely cites to *Gorman* v. *Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007), a case in which the Second Circuit determined that donning and doffing uniforms may not be compensable under

10

the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, due to an exception created by the Portal-to-Portal Act, 29 U.S.C. § 254(a). As is clear, *Gorman* does not make reference to the NYLL, and is not applicable here.[4] Thus, as in *Berger*, Defendant has failed to demonstrate that establishing liability on Plaintiff's state-law claims will require interpretation of the CBAs.

Defendant presents three additional arguments for removal, none of which has traction here. *First*, Defendant argues that Plaintiff's claims are preempted under the LMRA because the CBAs contain a provision that requires the parties to file internal grievances and seek arbitration for any disputes arising under the CBAs. (Def. Opp. 17-18).[5] This argument is

---

[4]  Defendant also cites to *Freeman* v. *River Manor Corp.*, No. 17 Civ. 5162 (RJD) (RER), 2019 WL 1177717 (E.D.N.Y. Mar. 13, 2019), *modified by* 2019 WL 3578432 (E.D.N.Y. Aug. 5, 2019), to establish that Plaintiff's NYLL claims will require interpretation of the CBAs. (Def. Opp. 12-13). In *Freeman*, the plaintiff sought to recover under federal and state law for uncompensated overtime pay. *Freeman*, 2019 WL 1177717, at *5. Plaintiff's employment was governed by a CBA, which provided a contractual right to overtime for hours worked between 35 and 40 hours per week. *Id.* The court found that, before the plaintiff would be "eligible to receive [statutory] overtime [for time worked over 40 hours], a trier of fact must assess plaintiff's wage claim for hours worked between 35 and 40 per week — an undertaking that is wholly dependent on an interpretation of the CBA's terms of employment." *Id.* at *5. Thus, the court found that the plaintiff's statutory claims were preempted under § 301 of the LMRA.

The CBAs in question here provide Plaintiff with a right to overtime compensation for hours worked "in excess of eight (8) hours per days and forty (40) hours per week." (Perez Decl., Ex. A at 5; Ex. B at 5). New York law only entitles Plaintiff to overtime for hours worked over 40 hours per week. 12 NYCRR § 142-2.2. Defendant claims that a trier of fact would have to determine if Plaintiff was entitled to contractual overtime on a daily basis, before determining if he was entitled to statutory overtime on a weekly basis. Defendant is incorrect. Plaintiff's claim is for weekly overtime pay and does not require analysis of potential daily overtime pay. (*See* Pl. Reply 2 ("Plaintiff does not allege violations of contractual overtime premiums, daily overtime premiums or pay differentials arising from the CBAs)).

[5]  Defendant raised a facially similar but substantively distinct argument in its statement for removal: that Plaintiff's claim was preempted because Defendant intended to file "a motion to dismiss for failure to abide by … the current CBA's mandatory grievance and arbitration provisions." (Dkt. #1 at 7). However, "an anticipated or actual federal defense generally does not qualify a case for removal," *Jefferson Cty., Ala.* v. *Acker*, 527 U.S. 423, 431 (1999), "and this rule applies to 'a defendant's assertion that a collective

unavailing because, as the Court has already found, Plaintiff has not raised a dispute under the CBAs; instead, he seeks to assert rights provided by New York law. It is of no moment that Plaintiff might have alleged the same facts at issue here to argue that Defendant had violated the CBAs. *See Severin*, 2011 WL 3902994, at *4 ("[e]ven if resolving a dispute under a state law claim and the [CBA] would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes"). Accordingly, the grievance and arbitration provisions of the CBAs are not implicated in this matter.

*Second*, Defendant claims that adjudication of Plaintiff's Complaint will require an examination of Defendant's past dealings and negotiations with Plaintiff's Union relating to the CBA, which examination would itself be tantamount to an interpretation of the CBAs. (Def. Opp. 14-15 (citing *Cooper Union Fed'n Coll. Teachers, Local 2163* v. *Cooper Union for the Advancement of Sci. & Art.*, No. 18 Civ. 5891 (VEC), 2019 WL 121000, at *4 (S.D.N.Y. Jan 7, 2019), for the proposition that consideration of the bargaining history and past practice under a CBA amounts to interpretation of the CBA). Specifically, Defendant notes that provisions of the CBAs relating to pre- and post-shift work were the subject of a grievance filed by the Union in 2009. According to

---

bargaining agreement compels arbitration' of a non-preempted state-law claim." *Berger* v. *New York Univ.*, No. 19 Civ. 267 (JPO), 2019 WL 3526533, at *1 (S.D.N.Y. Aug. 2, 2019) (quoting *Chu* v. *Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228-29 (S.D.N.Y. 2016)). Thus, even if this argument had been presented to the Court, it would have failed.

Defendant, the Court would need to understand the outcome of that grievance to resolve any issues "related to the application of Article 5(G)" of the CBAs. (*Id.* at 15). That may be so, but as the Court has already determined, Defendant failed to establish that Plaintiff's NYLL claims will require resolution of issues related to the application of any provision of the CBAs. For this reason, Defendant has not demonstrated that an examination of past dealings and negotiations under the CBAs will be necessary in this matter.

*Third* and finally, Defendant notes that the CBAs provide for differential payments to employees working certain shifts or performing specific job duties. (Def. Opp. 13-14). Defendant claims that "courts in this circuit have found time and again that where a CBA provides for certain shift-differentials or other increased payments, the claims are preempted." (*Id.*). But this assertion goes too far. It is true that sister courts have found that claims are preempted by the LMRA where they seek to recover compensation granted by a CBA's wage differential provisions. *See Johnson* v. *D.M. Rothman Co., Inc.,* 861 F. Supp. 2d 326, 328 (S.D.N.Y. 2012) (finding preemption where plaintiff claimed that defendant "failed to include certain wage differentials owed to them under the governing [CBA]"). Here, however, Plaintiff expressly "does not allege entitlement to any shift differentials" or any differential payments (Pl. Reply 7-8), so any provisions of the CBAs relating to differential payments would not establish LMRA preemption. *See Ramirez* v. *RiverBay Corp.,* 35 F. Supp. 3d 513, 524 (S.D.N.Y. 2014) (finding no preemption where plaintiff did not dispute his entitlement to differentials under the CBA).

Even if Plaintiff did allege that "certain premiums [] paid under the CBAs should factor in to the calculation of the rate of pay [he] is entitled to receive under state statutory law for unpaid time," it would not mean that his claims are necessarily preempted. *Berger*, 2019 WL 3526533, at *5 (citing *Isaacs* v. *Cent. Parking Sys. of N.Y., Inc.*, No. 10 Civ. 5636 (ENV) (LB), 2012 WL 957494, at *4-5 (E.D.N.Y. Feb. 27, 2012)). A claim is not preempted merely because it requires a court to reference a straightforward and unambiguous provision of the CBAs to determine the proper rates-of-pay. *See Johnson*, 861 F. Supp. 2d at 328 ("the provision of the CBA which guarantees the night differential does not require interpretation by the Court, because the meaning of its plain language is clear"). And Defendant has not established that any portions of the CBAs dealing with differential pay are ambiguous or would require interpretation.

As Judge Oetken stated in *Berger*, "[e]ven though it may eventually turn out that evaluating [Plaintiff]'s claims under New York law will require interpretation of the CBA[s], such that it ultimately becomes clear that his claims are indeed preempted, [Defendant] has not proven the point at this stage of the litigation." *Berger*, 2019 WL 3526533, at *5. And any doubts concerning removability must be resolved against removability. *Lupo*, 28 F.3d at 274.[6] Thus, Plaintiff's claims are not preempted by § 301 of the LMRA, and the case should be remanded to state court.

---

6    Defendant argues that "if state law liability hinges on how a CBA's ambiguity is resolved, then the claim depends on a substantial analysis of the CBA and are therefore preempted under Section 301." (Def. Opp. 15 (citing *Cooper Union Fed'n Coll. Teachers,*

14

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand is GRANTED.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and remand the case to the New York State Supreme Court, New York County.

SO ORDERED.

Dated:　　October 31, 2019
　　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　KATHERINE POLK FAILLA
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

*Local 2163* v. *Cooper Union for the Advancement of Sci. & Art.*, No. 18 Civ. 5891 (VEC), 2019 WL 121000, at *4 (S.D.N.Y. Jan 7, 2019)).  But Defendant's state-law liability does not hinge on an ambiguity of the CBAs; rather, liability hinges on whether state law defines compensable time in a way that includes the pre- and post-shift work at issue here.